UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       NO:    11-157

DOMINICK FAZZIO                              SECTION: "C"

## ORDER & REASONS

Before the Court is the United States' Motion to Disqualify an Attorney Due to a Potential Conflict of Interest. (Rec. Doc. 39). Based on the facts, the memoranda of counsel, and the law, the Court GRANTS the Motion for the following reasons.

## I. FACTS

Defendant Fazzio was indicted in the instant matter on June 24, 2011 on nineteen counts, including fraud, money laundering, mail fraud, and conspiracy to commit those crimes, in connection with construction management company Garner Services, L.L.C. ("Garner Services matter"). (Rec. Doc. 1). On November 4, 2011, the Grand Jury charged Defendant with three additional counts: two for obstruction of justice and one for filing a false tax return. (Rec. Doc. 83). Defendant is the Chief Financial Officer ("CFO") of River Birch, Inc., a land fill company that was the venue of a federal search warrant on September 23, 2010 ("River Birch matter"). (Rec. Docs. 21-1 at 1, 39 at 1). No indictment has come out of the River Birch matter.

In the Garner Services matter, Defendant is represented by Stephen London, James Cobb, and Stephen Haedicke. (Tr. 11/16/11 at 5-6, 28, 29). In the River Birch matter, he is represented by Mr. London only. (Tr. 11/16/11 at 5). River Birch is paying for Mr. London's services for

Defendant in his capacity as CFO of River Birch. (Tr. 11/16/11 at 6, 9). Mr. London does not represent River Birch in the River Birch matter nor has he in any matter in the past. (Tr. 11/16/11 at 11).

River Birch is not currently paying for Defendant's representation in the Garner Services matter. (Tr. 11/16/11 at 9, 27, 29). Defendant has paid Mr. London a portion of his fees, Mr. Cobb is currently unpaid, and Mr. Haedicke has been paid by Mr. London from funds paid to him by Defendant. (Tr. 11/16/11 at 9, 27, 29). Defendant and all three counsel hope that Defendant will be indemnified by River Birch for the fees he owes them (Tr. 11/16/11 at 16, 11, 27, 29), pursuant to a resolution passed by River Birch on February 28, 2011, which states, in pertinent part:

> RESOLVED, that [River Birch] is hereby authorized to indemnify the employees of [River Birch] who the Board deems to have acted in good faith, in a manner they reasonably believed to be in, and not opposed to, the best interests of [River Birch], and with no reasonable belief that their conduct was unlawful, from any and all Expenses incurred by them as a result of the Action.

(Rec. Doc. 43, Ex. A at 2). "Action" includes any action . . . that results from . . . the current investigation of [River Birch] and/or Indemnitees." (Rec. Doc. 43, Ex. A at 1-2). Counsel expect to be indemnified on the theory that the Garner Services matter is "a result of" the River Birch matter. (Rec. Doc. 43-1 at 9-10). Defendant, Mr. Cobb and Mr. Haedicke agree that Defendant may not fall under the indemnification resolution if Defendant cooperates with the government in either matter. (Tr. 11/16/11 at 21, 28, 29-30). In contrast, Mr. London asserted that this conclusion was "not [his] understanding." (Tr. 11/16/11 at 7, 8). In response to this Court's inquiry whether it would "be of some concern to you if you could not be indemnified," Mr. London said "[w]ell no. I mean, not really. . . . If I'm on the case, I'm on the case." (Tr. 11/16/11 at 10-11).

2

In addition, confidential information is being shared by Defendant's counsel and counsel for other potential defendants in the River Birch matter. Specifically, two of Defendant's lawyers, Mr. London and Mr. Cobb, acknowledged that they have participated in confidential conversations regarding the River Birch matter with Billy Gibbens and Kyle Shonekas, lawyers of potential suspect Fred Heebe in the River Birch matter. (Tr. 11/16/11 at 13-14, 28).

On November 16, 2011, this Court held a hearing to determine whether Defendant's waiver of conflict-free counsel was valid in that it was made knowingly, voluntarily, and intelligently, based on a colloquy with Defendant's counsel and Defendant according to the procedure set out in *United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259 (1984). The Court found that Defendant waived his right to conflict-free counsel. (Rec. Doc. 98 at 2). It must now determine whether to accept that waiver or disqualify Defendant's counsel.

In its Motion to Disqualify, the Government argues that Mr. London's fee arrangement with River Birch impairs his ability to negotiate a plea agreement with the Government (Rec. Doc. 39). It further argues that allowing Mr. London to continue to represent Defendant will waste judicial resources: if convicted, Defendant is likely to make and win an ineffective assistance of counsel claim because the fee arrangement and Defendant's counsel's sharing of confidential information with lawyers of potential defendants in the River Birch matter create an "impossible conflict of interest." (Rec. Doc. 39 at 7). Defendant argues that the fee arrangement complies with Louisiana law, L.A. R.S. § 12:83, and that no authority forbids such an arrangement. (Rec. Docs. 42 at 1, Tr. 11/16/11 at 54). Because Defendant's two other counsel have the same indemnification arrangement

3

as Mr. London, this Order applies to them as well.

## II. LAW & ANALYSIS

When a court learns of a potential conflict of interest, it must decide whether the conflict requires disqualification. *See Wheat v. United States*, 486 U.S. 153, 160 (1988); *In re American Airlines*, 972 F.2d 605, 611 (5th Cir. 1992). To determine whether counsel must be disqualified, the court must balance the right to choose one's counsel and the need to comply with rules of professional responsibility. *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 564-565 (2d Cir. 1973). The court has the discretion to refuse an individual's right to waive conflict-free counsel. *United States v. Newell*, 315 F.3d 510, 522 (5th Cir. 2002), *citing Wheat*, 486 U.S. at 163. It has broad latitude in deciding whether to refuse such waivers in cases of either actual or potential conflicts. *See United States v. Sanchez Guerro*, 546 F.3d 328, 333 (5th Cir. 2008) (citing *Wheat*, 486 U.S. at 163).

The United States Supreme Court has said that "inherent dangers . . . arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise." *Wood v. Georgia*, 450 U.S. 261, 269 (1981). In this case, the parties dispute whether the Garner Services matter and the River Birch matter are separate or the same, and the Court makes no determination on this issue here. The reasoning in *Wood* applies regardless. In particular, the risk in *Wood* "that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest" is just as applicable here because Defendant's cooperation in the Garner Services matter may involve divulging information about the

4

River Birch matter in which both he and his indemnitor are involved. *Wood*, 450 U.S. at 269.

New Jersey's highest court has outlined a helpful rule for determining whether counsel should be disqualified where fees are paid by one other than the client. The rule synthesizes three of that state's Rules of Professional Conduct ("NJRPC"), Rule 1.7(a), Rule 1.8(f), and Rule 5.4(c), which are virtually identical to their equivalents in the Louisiana Code of Professional Conduct ("LCPC").[1] *In the Matter of the State Grand Jury Investigation*, 200 N.J. 481, 494-497 (N.J. 2009). Together, the three rules dictate that if a third party is paying an individual's fees, counsel must be disqualified unless the following conditions are met: (1) "the informed consent of the client is

---

[1](a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
    (1) the representation of one client will be directly adverse to another client; or
    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
    (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
    (2) the representation is not prohibited by law;
    (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
    (4) each affected client gives informed consent, confirmed in writing.
NJRPC and LCPC Rule 1.7.

A lawyer shall not accept compensation for representing a client from one other than the client unless:
    (1) the client gives informed consent,
    (2) there is no interference with the lawyer's independence or professional judgment or with the client-lawyer relationship; and
    (3) information relating to representation of a client is protected as required by Rule 1.6.
NJRPC Rule 1.8(f). The LCPC adds the following to the first element: "or the compensation is provided by contract with a third person such as an insurance contract or a prepaid legal service plan." LCPC Rule 1.8(f)(1).

A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.
NJRPC and LCPC Rule 5.4(c).

secured"; (2) "The third-party payer is prohibited from, in any way, directing, regulating or interfering with the lawyer's professional judgment in representing his client"; (3) "There cannot be any current attorney-client relationship between the lawyer and the third-party payer"; (4) "The lawyer is prohibited from communicating with the third-party payer concerning the substance of the representation to his client"; (5) "The third party shall process and pay all such invoices within the regular course of its business, consistent with manner, speed and frequency it pays its own counsel"; (6) "Once a third party commits to pay for the representation of another, the third-party payer shall not be relieved of its continuing obligations to pay without leave of court brought on prior written notice to the lawyer and the client." *In the Matter of the State Grand Jury*, 200 N.J. at 494-497.

Here, the fee arrangement produces a conflict in two ways. First, Defendant's counsel hope to be paid by River Birch, Defendant's employer who is involved in a criminal investigation in which Defendant is also involved, namely the River Birch matter. This may prevent Defendant from achieving leniency in his Garner Services charges as it would not be in his financial interest or his counsel's financial interest for Defendant to denounce his employer. Compounding this conflict is Defendant's counsel's sharing of confidential information with lawyers of other potential defendants in the River Birch matter. This arrangement creates a serious risk of "interference with the lawyer's independence or professional judgment or with the client-lawyer relationship," in violation of Rule 1.8(f)(2) of the LCPC, and violates the third element of the New Jersey Supreme Court's thoroughly reasoned rule for third party fees. *In the Matter of the State Grand Jury*, 200 N.J. at 496. The combination of these factors gives rise to the type of "inherent danger" the United States Supreme Court cautioned against in *Wood*. 450 U.S. 269.

6

Second, the fee arrangement produces a conflict because it is conditional. Specifically, the River Birch Board of Directors will not indemnify Defendant if it finds that Defendant failed to act in any of the following three ways: (1) "in good faith"; (2) "in a manner they reasonably believed to be in, and not opposed to, the best interests of [River Birch]"; and (3) "with no reasonable belief that [his] conduct was unlawful." (Rec. Doc. 43, Ex. A at 2). Therefore, the arrangement may stop Defendant from cooperating with the Government or his counsel from advising him to do so, because this action will make him ineligible for indemnification under the terms of the February 26, 2011 resolution.

In order for Mr. London, Mr. Cobb, and Mr. Haedicke to continue to represent Defendant in this case, they would have to be paid or indemnified by a source other than River Birch for the above reasons, or if they continued to be indemnified by River Birch, they would have to immediately cease participation in confidential discussions with Defendant's employer's lawyers with respect to the River Birch and Garner Services matters, and the indemnification arrangement would have to be unconditional.

Accordingly,

IT IS ORDERED that the United States' Motion to Disqualify an Attorney Due to a Potential Conflict of Interest is GRANTED with respect to Stephen London, James Cobb, and Stephen Haedicke. (Rec. Doc. 39).

New Orleans, Louisiana, this 9th day of December, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

7