## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES**                                        **CRIMINAL ACTION**

**VERSUS**                                               **NO:   11-157**

**DOMINICK FAZZIO and**                                  **SECTION: "C" (5)**
**MARK J. TITUS**

### ORDER AND REASONS

Before the Court is defendant Dominick Fazzio's motion to sever. Rec. Doc. 221. Based on the facts, the memoranda of counsel, the law and the oral argument held on December 5, 2012, the Court has determined that severing the offenses is appropriate for the following reasons.[1]

Fazzio argues that severance is required because the two alleged conspiracies involve entirely different facts, are not part of the same transaction or series of transactions, are dissimilar from each other in the nature of the charges lodged and therefore to try them together would be unduly prejudicial. Rec. Doc. 221, 255.  The government emphasizes judicial economy, claiming that no serious risk exists to any specific trial right of Fazzio, and that in a joint trial the jury could make a reliable judgment about guilt. Rec. Docs. 230, 259.  The government also argues that evidence of each scheme is independently admissible at the joint

---

[1]The Court shall deal separately with the motion to sever's urging to sever the trials of defendants Dominic Fazzio and Mark Titus. Rec. Doc. 221.

trial under Rule 404(b) of the Federal Rules of Evidence. Rec. Doc. 230 at 14-15.

"The propriety of joinder under Rule 8 [of the Federal Rules of Criminal Procedure] is determined on the basis of the allegations of the indictment, which are accepted as true barring allegations of prosecutorial misconduct." *United States v. Faulkner,* 17 F. 3d 745, 758 (5th Cir. 1994). No such allegation has been made here, so the Court first turns to the indictment.

The first sixteen counts of the indictment allege various offenses in connection with an alleged conspiracy involving Dominick Fazzio and Hendrikus Ton. Rec. Doc. 187 at 1-10. Fazzio's role was as an accountant, financial advisor and tax preparer to Ton. Ton was the owner of several companies associated with offshore work. The indictment alleges that Ton was required to withhold certain taxes from his employees' wages, pay the matching employer portion of certain taxes and then provide those funds to the IRS on a periodic basis, as well as provide quarterly reports to the IRS on the amounts withheld. It is alleged that from January 1, 2006 through January 31, 2010, Fazzio and Ton conspired to under-report the income paid to Ton's employees, which allowed Ton to make keep more of those funds for his companies, by reducing the amount of taxes paid. Ton is alleged to have used a dormant company of his, Heather Marine, as the depository for the funds and then paid his workers out of that account. Fazzio is alleged to have filed quarterly reports with the IRS as well as filed Ton's companies' tax returns, and "knowingly and willfully" disguised those payments as "the cost of goods sold" rather than employee wages.

Count 17 through 32 allege a different conspiracy, again charging various offenses and

2

again involving Fazzio as a practicing accountant and tax preparer. *Id.* at 10-24.  This alleged conspiracy spanned from May 20, 2008 through May 23, 2011. *Id.* at 12.  Fazzio and his brother-in-law, Mark Titus, are accused of defrauding Garner Services Limited (GSL), a construction management company, by creating fraudulent invoices for work not actually done for GSL, but nonetheless paid for by GSL.  The alleged mechanism for the scheme was the use of two dormant companies that Fazzio managed, Westside Construction Services, Inc.(WCS), and Crescent City Materials and Hauling LLC (CCHM).  The indictment alleged that GSL would be instructed to make payments to those two entities for work allegedly performed for GSL, which was not in fact performed.  In Counts 24-29, both Fazzio and Titus are accused of disguising the illegal activity through money laundering. *Id.* at 19-21.  Both defendants are also charged with various counts of mail fraud, wire fraud and filing false tax returns, all arising out of the same activity.

On its face, the indictment alleges two completely separate conspiracies, albeit with Dominick Fazzio common to both, and to some degree with a similar *modus operandi*.  The issue is whether they are similar enough to be properly charged in one indictment.

Rule 8 of the Federal Rules of Criminal Procedure provides that:

(a) Joinder of Offenses. The indictment . . . may charge a defendant in separate counts with two or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

(b) Joinder of Defendants. The indictment . . . may charge two or more defendants

if they are alleged to have participated in the same act or transaction, or in the
same series of acts or transactions, constituting an offense or offenses. The
defendants may be charged in one or more counts together or separately. All
defendants needs not be charged in each count.

The weight of authority directs that Rule 8(b) **only** is determinative of joinder when
multiple defendants are charged. *United States v. Gentile,* 495 F.2d 626, 628 n.2 (5th Cir. 1974);
*United States v. Bova,* 493 F.2d 33, 35 (5th Cir. 1974); *United States v. Corbin,* 734 F.2d 643,
649 (11th Cir. 1984); *United States v. Kopituk,* 690 F.2d. 1289, 1312-14 (11th Cir. 1982); *United
States v. Jackson,* 562 F.2d 789, 793-94 (D.C. Cir. 1977).

Consequently, in this case where the indictment charges Dominick Fazzio for his
involvement with companies wholly or partially owned by Hendrikus Ton in the first conspiracy,
and charges Dominick Fazzio and Mark Titus in the second conspiracy, Rule 8(b) alone
determines the propriety of joinder.  The pivotal distinction is that while Rule 8(a) allows for
offenses of a "*similar* character" to be joined together, Rule 8(b) requires that the defendants
charged must have participated in the "*same* act or in the *same* series of acts" to be properly
tried together.

The Court clearly finds that this standard has ***not*** been met in the joinder of the
Fazzio/Ton indictment with the Fazzio/Titus indictment.  Ample jurisprudence supports this
conclusion.

In *United States v. Whitehead,* 539 F.2d 1023, 1025 (4th Cir. 1976), Whitehead and
Harold Jackson were involved in a sale of cocaine.  Two weeks thereafter, Jackson and William

4

Meredith took part in another sale.  All three defendants lived in the same apartment building.

"Although there was a 'series' of transactions involving a common denominator (Jackson) the

government did not meet its burden of proving there was any connection between appellant's

offense and Meredith's offense.  Carried to its logical conclusion, the government's theory might

well allow us to join in a common indictment and trial two delinquent taxpayers who used the

same accountant.  Such a result approaches the ridiculous." *Id.*  Ironically, the only common

denominator in the case at bar is Dominick Fazzio as the accountant for both Ton and Titus.

Similarly to *Whitehead*, where the charge at least was the same (cocaine sales), in other

cases where the connection between the two charged conspiracies were far closer than in this

case, courts have still found improper misjoinder.  In *United States v. Marionneaux,* 514 F.2d

1244, 1248-49 (5th Cir. 1975), five individuals were charged with conspiracy to obstruct justice

in two counts; the common objective was to interfere with the criminal prosecution of Edward

Partin, the only common defendant.  "A 'series' of acts under Rule 8(b) . . . is something more

than 'similar' acts . . . . [T]here are only three links between the conspiracy charged in Count 1

and that alleged in Count II: (1) the presence of Edward G. Partin as a defendant; (2) the

allegation that Jerry Millican, a Count I defendant, participated in one overt act of Count II; and

(3) the fact that both conspiracies were, in part, schemes to prevent witnesses from testifying

against Partin.  Absent these factors, the conspiracies have different participants and completely

different overt actions . . . . Where . . . there is no substantial identity of facts or participants

between the two offenses, there is no 'series' of acts under Rule 8(b). We hold, therefore, that

5

joinder of defendants was impermissible under Rule 8(b), and that the district court committed reversible error in denying defendants' motion to sever." (citations omitted). *Id.*

Similarly here, Dominick Fazzio, like Partin, is the only common defendant in the two alleged conspiracies, and "the conspiracies have different participants and completely different overt actions." *Id.* at 1248.

In *United States v. Levine,* 546 F.2d 658, 662-63 (5th Cir. 1977), the defendants were charged with conspiracy and interstate shipment of obscene films.  While the charges were the same, the allegations arose "from different factual matrices, implicating different defendants at different times . . . . Especially when, as here, the nexus between the separate groups is the defendants common to each and a mutual identity of the counts charged, the transference of guilt from one group of defendants to another is inexorable.  The result is inherent prejudice that no form of limiting instructions or cautionary charge could absolve . . . ." *Id.* at 662.  The government argued it was a 'wheel conspiracy' - "For a wheel conspiracy to exist those people who form the wheel's spokes must have been aware of each other and must do something in furtherance of a single, illegal enterprise." *Id.* at 663.

Again, in the case at bar, Fazzio is the only common defendant and the indictment makes no claim that Ton and Titus were aware of each other, much less that they did something in furtherance of a single, illegal enterprise.

In *United States v. Bova,* 493 F.2d at 35, Michael Bova and John Coccuzza were charged in a four count indictment with distribution of heroin.  They were jointly charged in Count 1 and

II, but Counts III and IV charged only Coccuzza for dealing heroin on September 8, 1972. *Id.*

The Fifth Circuit found prejudicial misjoinder and reversed Bova's convictions. *Id.* at 35-37.

"Here, there was no allegation . . . in the indictment . . . indicating any involvement [by Bova] in

relationship to the September 8th sale . . . . There was no 'series' of transactions as to Bova." *Id.*

at 37.  The Court pointed out that "courts agree almost uniformly that improper joinder is

inherently prejudicial and that granting a motion for severance, where there has been misjoinder,

is mandatory and not discretionary with the district courts." *Id.* at 35; *see also United States v.*

*Singh,* 261 F. 3d 530, 533-34 (5th Cir. 2001); *United States v. Jackson,* 562 F.2d at 794-797;

*United States v. Gentile,* 495 F.2d at 630-631; *United States v. Eagleston,* 417 F.2d 11, 14 (10th

Cir. 1969); *United States v. Columbia Med. Sys. Inc.,* 2006 U.S. Dist. Lexis 14373 (W.D. Wash.

2006); *United States v. Randazzo,* 80 F.3d 623, 627 (1st Cir. 1996); *United States v. Richardson,*

161 F.3d 728, 733 (D.C. Cir. 1998); *United States v. Mackins,* 315 F. 3d 399, 412-13 (4th Cir.

2003); *United States v. Webb,* 827 F. Supp. 840, 841-42 (D. Mass. 1993).

   Finally, in *Wright, Federal Practice and Procedure,* §143, p. 41-42, the authors

described the risks of joining similar, but unrelated charges:

> [It] can creat[e] a heightened risk to the defense by making it more difficult for a
> defendant to testify on his own behalf for one charge but not for another, by
> permitting the jury to hear evidence that would be inadmissible in separate trials,
> and by creating a risk that the jury will use evidence of separate crimes
> cumulatively.  These risks, coupled with the relatively small amount of resource
> savings likely to flow from this type of consolidation, have raised the question
> whether joinder of this type should ever be permitted.

The latter point is well taken.   When two entirely separate factual scenarios are charged, the only "savings" in terms of time is the time it takes to select a jury.  The relatively modest savings, when coupled against the serious risks of prejudice to a defendant, makes joinder inappropriate.

The government's arguments are simply unavailing.  It cites *Zafiro v. United States,* 506 U.S. 534, 537-540 (1993), for the correct proposition that Rule 8(b) provides defendants may be charged together if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions."  Clearly, the Ton/Fazzio conspiracy and the Titus/Fazzio conspiracy involve entirely separate acts and transactions, unconnected to each other, other than by Fazzio's presence in both.

The government also notes that Rule 8(a) of the Federal Rules of Criminal Procedure allows a defendant to be charged with crimes that "are of the same or similar character."   The government  fails to acknowledge, however, that when more than one defendant is on trial, Rule 8*(b)* is determinative, and that provision does *not* allow joinder of crimes that are simply of a "similar character,"  but rather, again, requires that the defendants have participated in the *same* acts or series of acts.  Indeed, much of the case law cited by the government involves cases where either a single defendant was charged, hence the broader joinder Rule 8(a) was applicable, or unquestionably the defendant or defendants were in fact involved in the same acts or series of acts. *See, e.g. United States v. Bullock,* 71 F. 3d 171 (5th Cir. 1995); *United States v. Ballis,* 28 F.3d 1399 (5th Cir. 1994);   *United States v. Fortenberry,* 914 F.2d 671 (5th Cir. 1990); *United*

8

*States v. Cartwright,* 632 F. 2d 1290 (5th Cir. 1980); *United States v. Edelin,* 118 F. Supp. 2d 36 (D.D.C. 2000); *United States v. Lewis,* 2011 WL 1575614 (M.D. La. Apr. 26, 2011); *United States v. Becker,* 585 F.2d 703 (4th Cir. 1978); *United States v. Porter,* 764 F.2d 1 (1st Cir. 1985); *United States v. Porter,* 821 F.2d 968 (4th Cir. 1987); *United States v. Krenning,* 93 F.3d. 1257 (5th Cir. 1996); *United States v. Harrelson,* 754 F. 2d 1153 (5th Cir. 1985); *United States v. Rittweger,* 524 F. 3d 171 (2d Cir. 2008); *United States v. Caldwell,* 560 F. 3d 1202 (10th Cir. 2009); *United States v. Turoff,* 853 F.2d 1037 (2d Cir.1988).   The government cites also to *United States v. Laca,* 499 F. 2d 922, 924 (5th Cir. 1974) for the proposition that the defendants need not be charged in each count, but the case also goes on to state that the defendants must "have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."   That is simply not the case with these two alleged distinct conspiracies.

It is perhaps worth noting also that the government cited a case in its Supplemental Brief filed on December 11, 2012 (Rec. Doc. 259), *United States v. Warren,* 2010 WL 3923167, at *3 (E.D. La. 2010) in which a district court judge denied severance.   After the government's brief was filed, the Fifth Circuit actually reversed that conviction for failure to grant the severance. *United States v. McRae, et al.,* 702 F. 3d 806, 820-826 (2012).   The Fifth Circuit was "convinced" that the trial court abused its discretion in denying the severance and even added "We really do not view this question as close in view of how the trial of this case unfolded," finding that defendant Warren "suffered compelling prejudice." *Id.* at 825.   The message is it's

better to be safe than sorry, and hence sever before trial.

The government also warns of "avoiding the scandal and inequity of inconsistent verdicts." Rec. Doc. 230 at 2.  Since both conspiracies involve entirely different facts, no "inconsistent" verdicts will occur.

The government claims that judicial economy would be fostered by a joint trial, but as already pointed out earlier in this opinion, since the two conspiracies involve completely different facts, the only time savings would be in selecting a jury, a process that takes at most a few days.

The government argues that similarities abound in the two alleged conspiracies - a common participant, Fazzio - events occurring over roughly the same time period in the same general location, using the same *modus operandi* of dormant companies, the same tax provision, and Fazzio abusing a position of expertise to perpetuate the frauds. *Id.* at 7-8.  But again, this is the standard for joinder under Rule 8(a) which is inapplicable when more than one defendant is charged.  But even if Rule 8(a) were applicable, the Court would still not be persuaded.  In *United States v. Huffine,* 2002 U.S. Dist. LEXIS 11973, at *3-8 (E.D. La. June 26, 2002), a single defendant was charged, hence Rule 8(a) was in fact applicable.  Counts 1-4 charged mail fraud, involving a scheme to defraud in connection with roof repairs to a school.  Counts 5-8 charged a failure to pay to the IRS collected withholding taxes (also a charge in the first conspiracy here).  Counts 9-10 alleged false statements on the same tax returns.  Huffine wanted the three groupings to be severed.  The government argued they were of the same or similar

10

character as "all the counts involve schemes to defraud through the use of false representations to secure a monetary advantage . . . . all the offenses charged are acts constituting a common plan involving the increase of funds in the defendant's corporate account . . . . " *Id.* at *3.  The Court found that the indictment made no connection between the mail fraud and tax charges "other than it demonstrates that all of the offenses occurred in the same years and that the defendant's company played a role in the separate offenses." *Id.* at *6.  (A temporal argument similar to what the government asserts here.)  More significantly, the Court said:

> [T]he Court is not persuaded by the Government's argument that the mail fraud and tax charges are of the same or similar nature simply because they both involve false statements and the defendant's motive to increase his income.  To accept that definition and describe the offenses charged in this indictment as similar is to generalize the term 'similar' in such a manner as to render it and Rule 8(a) void of any real content.

*Id.* at *6-7.

But again, as already noted, perhaps *ad nauseum*, Rule 8(a) is inapplicable.

The government's final argument is that each scheme is admissible against the other, under Rule 404(b) of the Federal Rules of Evidence, an argument they present in a scant two pages of their initial opposition. Rec. Doc. 230, Opposition to Motion to Sever.

Character Evidence; Crimes or Other Acts

(a) Character Evidence.

(1) Prohibited Uses. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait...

(b) Crimes, Wrongs, or Other Acts.

11

(1) Prohibited Uses**.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The only two cases cited by the government are not particularly helpful because they beg the question to be answered.  Both *United States v. Chagra,* 754 F.2d 1186 (5th Cir. 1985) and *United States v. Ramey,* 2008 WL 4582089 (5th Cir. 2008) involved *one* conspiracy encompassing several crimes.  Consequently, relying on 404(b) was unnecessary since all the evidence was intrinsically admissible.  The issue here is whether 404(b) can apply to two distinct conspiracies.

As the statute makes clear, admitting evidence of other wrongdoing is not permitted if the sole purpose is to imply that the person is a bad actor, hence likelier to have committed the crime at issue.   It is admissible if for a distinct purpose, such as proving motive, intent, identity and so forth.   Nevertheless, courts have long recognized that this distinction is fraught with danger, since a juror would still have the tendency nonetheless to tar the defendant broadly with the other wrong doing, regardless of whether it might be relevant for a particular characteristic. *United States v. Beechum,* 582 F.2d 898, 914 (5th Cir. 1978)   "What the rule calls for is essentially a two-step test.  First, it must be determined that the extrinsic evidence is relevant to an issue other than the defendant's character.   Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice." *Id.* at  911.

The government suggests that we should launch into a joint trial, charging disparate and separate conspiracies, and trust them that by the end of the day, the government will have convinced the Court and the jury that the conspiracies were not in fact as disparate as they appear to be.  This is a risk the Court simply will not take.  Considering that the only savings in time in trying them together is the time it takes to select a jury, and considering the great risk of prejudicial spillover from trying both of these separate conspiracies together, the wiser course is to sever now, rather than risk a reversal later.  There is significant Fifth Circuit case law reversing convictions because of erroneously admitted 404(b) evidence. *United States v. Stallings,* 437 F. 2d 1057 (5th Cir. 1971); *United States v. Broadway,* 477 F.2d 991 (5 Cir. 1973); *United States v. Lawrance,* 480 F.2d 688 (5th Cir. 1973); *United States v. Jaqua,* 485 F.2d 193 (5th Cir. 1973); *United States v. Rivera,* 490 F.2d 447 (5th Cir. 1974); *United States v. Fonseca,* 490 F.2d 464 (5th Cir. 1974); *United States v. Goodwin,* 492 F.2d 1141 (5th Cir. 1974); *United States v. Vosper,* 493 F. 2d 433 (5th Cir. 1974); *United States v. Miller,* 500 F.2d 751 (5th Cir. 1974); *United States v. Myers,* 550 F.2d 1036 (5th Cir. 1977); *United States v. Wesevich,* 666 F.2d 984 (5th Cir. 1982); *United States v. Fortenberry,* 860 F.2d 628 (5th Cir. 1988); *United States v. Hays,* 872 F.2d 582 (5th Cir. 1989); *United States v. Ridlehuber,* 11 F.3d 516 (5th Cir. 1993); *United States v. Jackson,* 339 F.3d 349 (5th Cir. 2003); *See also, Old Chief v. United States,* 519 U.S. 172 (1997); *United States v. Archer,* 733 F.2d 354 (5th Cir. 1984); *United States v. Impastato,* 535 F. Supp. 2d 732 (E.D. La. 2008).

*United States v. Myers*, *infra,* is particularly instructive.  One of the government's

arguments is that Fazzio has a unique *modus operandi:* (1) his expertise as an accountant; (2) the use of dormant/shell companies as conduits to transfer/conceal money and (3) the use of a particular provision of the tax code to perpetuate the scheme.   "In short, both schemes exhibit Fazzio's unique criminal footprint and are only properly understood with reference to each other."[2]   In *Myers,* the government likewise argued similarities between two crimes to try to link the alleged perpetrator of one as the likely perpetrator of the other. 550 F.2d 1036. *Id.* at 1046. In *Myers,* the crimes were bank robberies.  *Id.* at 1039.  The government's alleged similarities were that the robberies were committed between two and three o'clock; the bank was located on the outskirts of town, near a major highway; the participants used a revolver, brought their own bag for carrying away the proceeds, wore gloves and crudely made masks from nylon stockings. In one of the banks two women employees were present and in the other five women employees. The Court found that most of the similarities were in fact common characteristics of all armed bank robberies, and reversed the defendant's conviction.   Likewise, here, the government argues so-called signature characteristics of Fazzio's alleged crimes, and urges the Court to trust that they will prove them up.   Again, this is a risk the Court is not willing to take.

Finally, considering the troubled history of this prosecution, the Court intends to take every precaution so that these cases will only have to be tried once.

The motion to sever the Ton conspiracy and the Titus conspiracy is

---

[2]Rec. Doc. 259, p. 7.  The Court seriously questions whether the government truly believes the two separate conspiracies "are only properly understood with reference to each other."   That implies that the two separate conspiracies, standing on their own, do not establish criminal conduct.  It also implies that the government hopes that by throwing both conspiracies into one trial, it will create enough of a smell that the jury will convict Fazzio of something on the basis of his character; something 404(b) specifically forbids.

14

GRANTED.

Accordingly,

**IT IS ORDERED** that defendant's motion to sever is PARTIALLY GRANTED and

PARTIALLY DEFERRED. Rec. Doc. 221.

**IT IS FURTHER ORDERED** that the parties shall confer and decide together whether

the Fazzio/Ton charges, Counts 1-16 of the Second Superseding Indictment, Rec. Doc. 187, at 1-

10, or the Fazzio/Titus charges, Counts 17-32, Rec. Doc. 187, at 10-24, shall be tried first. The

parties shall either inform the Court of their decision, or if they cannot come to a decision

together, each shall brief the Court on their opinion, by March 11, 2013 at 9:00 a.m.

New Orleans, Louisiana, this 5th day of March, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**

15